IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| TIMOTHY MILLER, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 17-231 |
| | ) | Judge Nora Barry Fischer |
| WASHINGTON TROTTING ASSOCIATION, LLC D/B/A THE MEADOWS RACETRACK & CASINO, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

I. INTRODUCTION

Presently before the Court is a Motion for Reconsideration filed by Defendant Washington Trotting Association, LLC, (Docket No. [17]), Defendant's Brief in Support, (Docket No. [18]), and Plaintiff Timothy Miller's response thereto, (Docket No. [20]). Defendant seeks reconsideration of this Court's Order of March 14, 2017, remanding this matter, *sua sponte*, for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1447(c) based on the jurisdictionally defective Notice of Removal filed in this case. (Docket No. 16). After careful consideration of the parties' positions and for the following reasons, Defendant's Motion for Reconsideration [17] is denied.

II. RELEVANT BACKGROUND

Miller is a Pennsylvania citizen and works as a table games dealer at the Meadows Racetrack & Casino, located in Washington County, Pennsylvania. (Docket No. 1-1). The Meadows previously operated as an incorporated business, Washington Trotting Association, Inc., a Delaware corporation with its principal place of business in Pennsylvania. (*Id.*). The Meadows was sold in the fall of the 2016 to Pinnacle Entertainment, Inc. and the incorporated

1

business was converted to Washington Trotting Association, LLC. (*Id.*). The ultimate parent company of Washington Trotting Association, LLC, is now Pinnacle Entertainment, Inc. which is a Delaware corporation with its principal place of business in Nevada. (Docket Nos. 1-3; 6).

In this lawsuit, Miller complains that the Meadows adopted a policy whereby he and other dealers were required to share tips with supervisors. (*See* Amended Complaint, Docket No. 1-1 at 27-47). Miller believes that this policy is contrary to regulations governing casinos in the Commonwealth. (*Id.* at ¶ 9). He alleges that he and the other table games dealers working at the Meadows were not paid the full percentage of tips that were owed to them because the tip pools were diluted by the presence of the supervisors. (*Id.*). Miller seeks to bring claims on his own behalf and for those individuals similarly situated to him pursuant to the Pennsylvania Wage Payment and Collection Law; breach of contract; and/or breach of implied contract. (*Id.*). Miller generally claims damages for himself and the other class members for unpaid wages; liquidated damages in an amount of 25% of those wages; interest; and reasonable attorneys' fees and costs. (*Id.* at 42-45).

Miller initially filed a Complaint in Civil Class Action in the Court of Common Pleas of Washington County on December 27, 2016, naming Washington Trotting Association, Inc.; Washington Trotting Association, LLC; and Cannery Casino Resorts, LLC as Defendants. (Docket No. 1-1 at 5). In this Complaint, Plaintiff specifically noted that Washington Trotting Association, Inc. was converted to Washington Trotting Association, LLC in the fall of 2016. (*Id.* at ¶¶ 15-16). Counsel for the parties then entered into a Praecipe to Amend Complaint dated January 23, 2017 authorizing the filing of an Amended Complaint substituting "Washington Trotting Association LLC d/b/a The Meadows Racetrack and Casino for the Defendants named in Plaintiff's Complaint which was filed on December 27, 2016." (Docket

No. 1-1 at 25). Plaintiff filed the Amended Class Action Complaint on January 27, 2017, setting forth the causes of action noted above. (Docket No. 1-1 at 27-47).

Thereafter, Defendant removed the case to this Court on February 21, 2017 "in accordance with the applicable Federal Rules of Civil Procedure and Title 28 of the United States Code §§ 1332, 1441, and 1446." (Docket No. 1). The Notice of Removal made no mention of the class action claims, arguing that subject matter jurisdiction was premised on diversity of the parties based on their citizenship and that the amount in controversy was in excess of $75,000.00 due to an alleged admission in the Amended Complaint that the case sought damages in excess of the arbitration limits and that the attorneys' fees requested by plaintiff would exceed the jurisdictional amount. (*Id.*). Defendant filed its Answer on February 23, 2017. (Docket No. 5). The Court set the matter for a case management conference on March 16, 2017. (Docket No. 7). In advance of same, the parties filed a Rule 26(f) Report and Stipulation Selecting ADR Process. (Docket Nos. 11; 15). The Rule 26(f) Report specifically noted that Plaintiff was "contemplating filing a Motion to Remand to remand this case to state court" and that he would "do so on or before March 23, 2017." (Docket No. 11 at ¶ 5).

In preparation for the case management conference, the Court reviewed the file, determined that it lacked subject matter jurisdiction over the case and entered an order remanding the case on March 14, 2017 pursuant to 28 U.S.C. § 1447(c) and cancelling the case management conference. (Docket No. 16). On the next day, Defendant filed a motion for reconsideration and supporting brief, (Docket Nos. 17, 18), to which Plaintiff filed a response on March 22, 2017, (Docket No. 20). As the motion is fully briefed, it is now ripe for disposition.

III. LEGAL STANDARD

"Motions for reconsideration under Rule 59(e) of the Federal Rules of Civil Procedure

are granted sparingly '[b]ecause federal courts have a strong interest in finality of judgments.'" *Jacobs v. Bayha*, 2011 WL 1044638, at *2 (W.D. Pa. Mar. 18, 2011) (quoting *Continental Cas. Co. v. Diversified Indus., Inc.*, 884 F. Supp. 938, 943 (E.D. Pa. 1995)) (emphasis added). "Because of the interest in finality, at least at the district court level ... the parties are not free to relitigate issues the court has already decided," *Williams v. City of Pittsburgh*, 32 F. Supp. 2d 236, 238 (W.D. Pa. 1998) (citing *Rottmund v. Continental Assurance Co.*, 813 F. Supp. 1104, 1107 (E.D. Pa. 1992)), or to raise arguments that a party had the opportunity to present before the Court's decision, *see United States v. Dupree*, 617 F.3d 724, 732–33 (3d Cir. 2010) (quotations omitted). Rather, the purpose of a motion for reconsideration "is to correct manifest errors of law or fact or to present newly discovered evidence.'" *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)). The moving party bears a heavy burden to demonstrate that an order should be reconsidered and the Court will only grant such a motion if the moving party shows: (1) an intervening change in the controlling law; (2) the availability of new evidence which was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent a manifest injustice. *Max's Seafood Café*, 176 F.3d at 677 (citing *North River Ins. Co. v. Cigna Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)).

IV. DISCUSSION

Here, Defendant does not point to an intervening change in the controlling law or the availability of new evidence which was not available when the Court issued its Order. (Docket No. 18). Instead, Defendant claims that the Court erred as a matter of law in remanding the case pursuant to 28 U.S.C. § 1447(c) for lack of subject matter jurisdiction. (*Id.*). Defendant concedes that although this is a class action, it is not seeking to invoke the Court's jurisdiction

4

under 28 U.S.C. § 1332(d), or the Class Action Fairness Act ("CAFA") and that the Court would not have jurisdiction under that statute. (*Id.*). Defendant further asserts that it has pled sufficient facts to demonstrate that this Court has diversity jurisdiction over the claims of the lead Plaintiff, Timothy Miller, pursuant to 28 U.S.C. § 1332(a), estimating that the attorney's fees that may be recoverable in this action will likely exceed the jurisdictional amount of $75,000.00 and that the named parties are completely diverse, i.e., Miller is a Pennsylvania citizen while Washington Trotting Association, LLC, is a citizen of Delaware and Nevada, based on the citizenship of its ultimate parent company. (*Id.*). In response, Plaintiff agrees that the Court should consider whether the assertion of subject matter jurisdiction over this matter is appropriate under 28 U.S.C. § 1332(a). (Docket No. 20). Plaintiff admits that if the full amount of potential attorneys' fees are considered then the individual claims by the lead plaintiff are likely in excess of the jurisdictional amount of $75,000.00; however, Plaintiff concedes that he and his counsel have not researched whether the entire amount of attorneys' fees recoverable in this class action may be aggregated and considered by the Court in reaching the jurisdictional amount. (*Id.*). Finally, Plaintiff suggests that if the Court finds that it has subject matter jurisdiction over the individual claims, then the Court should exercise supplemental jurisdiction over the class action claims of the unnamed class members under 28 U.S.C. § 1367. (*Id.*).

It is well established that federal courts are of limited jurisdiction and "the party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court." *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007) (citations omitted). Relevant here, the general removal statute, 28 U.S.C. § 1441(a), provides that "[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original

5

jurisdiction, may be removed by the defendant." 28 U.S.C. § 1441(a). "A District Court has subject matter jurisdiction under 28 U.S.C. § 1332 if the matter in controversy exceeds $75,000 and the parties are 'citizens of different States.'" *O'Connell v. New Jersey Tpk. Auth.*, 649 F. App'x 280, 283 (3d Cir. 2016) (quoting 28 U.S.C. § 1332(a)(1)). "For a removal predicated upon diversity of citizenship, a proper exercise of federal jurisdiction requires satisfaction of the amount in controversy requirement as well as complete diversity between the parties, that is, every plaintiff must be of diverse state citizenship from every defendant." *Encompass Ins. Co. v. Stone Mansion Rest.*, Civ. A. No. 17-125, 2017 WL 528255, at *1 (W.D. Pa. Feb. 9, 2017).

"It is important to bear in mind that parties may not confer subject matter jurisdiction by consent." *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004). Hence, "[t]he court has a duty to inquire, *sua sponte*, into its subject matter jurisdiction whether removal has been challenged or not." *City of Greensburg v. Maydak*, No. 2:15-CV-480, 2015 WL 1860108, at *1 (W.D. Pa. Apr. 22, 2015) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006); *Huber v. Taylor*, 532 F.3d 237, 249 (3d Cir. 2008)); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) ("Subject-matter limitations on federal jurisdiction serve institutional interests. They keep the federal courts within the bounds the Constitution and Congress have prescribed. Accordingly, subject-matter delineations must be policed by the courts on their own initiative."). "[R]emoval statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand." *A.S. ex rel. Miller v. SmithKline Beecham Corp.*, 769 F.3d 204, 208 (3d Cir. 2014) (quotations and citation omitted). Finally, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

In this Court's estimation, reconsideration of the March 14, 2017 Order remanding this case to the Court of Common Pleas of Washington County is not warranted because, as the Court held previously, Defendant has failed to demonstrate that the Court has subject matter jurisdiction over this case and the matter must be remanded pursuant to 28 U.S.C. § 1447(c). (Docket No. 16). At the outset, the Court retains the authority to interpret its own Orders, *see E.E.O.C. v. U.S. Steel Corp.*, 877 F. Supp. 2d 278, n. 5 (W.D. Pa. 2012), and believes that the parties read the March 14, 2017 Order too narrowly by suggesting that the Court overlooked that the removal was premised on the general diversity jurisdiction statute, i.e., 28 U.S.C. § 1332(a). (*See* Docket Nos. 18, 20). Indeed, the Court expressly noted that the removal was based on the diversity of the parties and an alleged "reasonable probability" that the amount in controversy exceeds $75,000.00, but also pointed out that the Amended Complaint set forth "class action allegations claiming violations of the Pennsylvania Wage Payment and Collection Law, 43 P.S. §§ 260.1, *et seq.*, breach of contract, and breach of implied contract on behalf of himself and others similarly situated, (Docket No. 1-1), all state law causes of action for which no specific amount of damages, attorneys' fees and costs is claimed." (Docket No. 16). The Court continued that "no alternative basis for the assertion of subject matter jurisdiction" had been made by Defendant and that the Court did not have jurisdiction under CAFA, which is now uncontested by the parties.[1] (*Id.*). All told, the Court concluded that subject matter jurisdiction was lacking and remanded the matter pursuant to 28 U.S.C. § 1447(c), thereby rejecting the theories advanced by Defendant upon which the removal was premised and are now reargued on reconsideration. (*Id.*).

---

[1] The Court would add that the parties are not even diverse for CAFA purposes, as § 1332(d)(10) provides that "[f]or purposes of this subsection and section 1453, an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10). It is uncontested that Washington Trotting Association, LLC was organized in Delaware and has its principal place of business in Washington County, Pennsylvania.

With that said, in light of the apparent confusion regarding the reasons supporting the March 14, 2017 Order, the Court will more fully explain why the remand remains appropriate. Initially, the Notice of Removal contains several apparent defects which were not expressly noted by the Court. (Docket No. 1). First, Defendant erroneously states that subject matter jurisdiction under diversity of jurisdiction is based on 28 U.S.C. § 1332(a)(3) in both the Notice of Removal and corresponding Civil Cover Sheet.[2] (*See* Docket Nos. 1 at ¶¶ 7, 13; 1-4). But, section 1332(a)(3) governs diversity jurisdiction over matters where citizens or subjects of foreign states are named as parties in a case and no such foreign parties are involved in this matter. *See* 28 U.S.C. § 1332(a)(3) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between-- … (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties."). To the extent that removal was based on diversity of the parties because they were citizens of different states, the correct statutory provision is § 1332(a)(1). *See* 28 U.S.C. § 1332(a)(1) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between-- … (1) citizens of different States.").

Second, Defendant states in the Notice of Removal that Plaintiff pled that the "damages sought are in excess of the arbitration limits" and thereby "admits that his damages exceed $50,000. See Washington County Local Rule L-1301." (Docket No. 1 at ¶ 15). This assertion is then repeated in the brief supporting the motion for reconsideration, wherein Defendant claims that "Plaintiff specifically pled that the damages sought exceed the arbitration limits, thus

---

[2] The Court notes that in the brief supporting the motion for reconsideration, counsel omits the subsection (3) when referencing Defendant's position. (*See* Docket No. 18 at 5 ("The Meadows did not rely on that statute—or any of the jurisdictional requirements of 28 U.S.C. § 1332(d)—to establish the Court's subject-matter jurisdiction. It invoked instead 28 U.S.C. § 1332(a), see ECF No. 1, at ¶¶ 7, 13.")).

conceding damages in excess of $50,000." (Docket No. 18). Notably, there are no citations provided to any paragraph in the Amended Complaint where these supposed allegations are located and upon the Court's review of same, there are simply no such allegations made throughout the entire Amended Complaint, which makes no mention of the arbitration limits at all and contains no citations to the Washington County Local Rule.[3] (*See* Docket No. 1-1). Of course, a party cannot be held to a judicial admission of a fact that is not pled in the Amended Complaint. *See Judon v. Travelers Property Cas. Co. of America*, 773 F.3d 495, 502 n.6 (3d Cir. 2014) ("A fact asserted in a pleading, which is both unequivocal and which would normally require evidentiary proof, constitutes a judicial admission.").

Third, the Notice of Removal states in conclusory fashion that the removal "is timely as it has been filed within thirty days of service of the Amended Complaint. 28 U.S.C. § 1446," (Docket No. 1 at ¶ 3), after noting that the Complaint was filed in state court on December 21, 2016[4] and the Amended Complaint was filed on January 27, 2017 with Defendant accepting service on that date, (Docket No. 1 at ¶¶ 1, 2). But, these averments – which omit the specific subsection of § 1446 upon which the asserted timeliness of the removal is based—are not sufficient to demonstrate that the removal was timely under either of the potentially applicable subsections, namely, §§ 1446(b)(1) or 1446(b)(3). To this end, § 1446(b)(1) provides that "[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by

---

[3] It appears to the Court that the "arbitration limits" allegation which is typically included in state court complaints for the purpose of having the complaint assigned to a Judge rather than referred to compulsory arbitration is omitted in this instance because this is a class action governed by Pa.R.C.P. 1703 which requires a class action to be automatically assigned to a Judge. To this end, Rule 1703 provides:
    (a) A class action shall be commenced only by the filing of a complaint with the prothonotary.
    (b) Upon the filing of the complaint the action shall be assigned forthwith to a judge who shall be in charge of it for all purposes.
Pa.R.Civ.P. 1703.
[4] The attached docket report from the Court of Common Pleas indicates that this filing was made on December 27, 2016. (Docket No. 1-1 at 2). The Complaint itself is dated December 22, 2016, (Docket No. 1-1 at 23), although it was verified by Miller on December 21, 2016, (*id.* at 24).

the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). In addition, section 1446(b)(3) states:

> (3) […] if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b)(3). Thus, if the removal is based on an amended complaint, service of same is not the triggering event for the time period to remove the case to federal court. *Id.* Additionally, courts have determined that "other paper" in this statute would include the receipt of an unsigned stipulation to dismiss a non-diverse defendant or other correspondence between counsel indicating that the non-diverse defendant would be dismissed. *See Boggs v. Harris*, --- F. Supp. 3d ---, 2016 WL 7403872, at *15-16 (W.D. Pa. Dec. 22, 2016) (Conti, C.J.).

Following this authority, the Court simply cannot divine from the cursory assertions in the Notice of Removal *when* Defendant received the Complaint, Amended Complaint or other paper which indicated that the case was removable, thereby triggering the 30-day removal clock. (*See* Docket No. 1 at ¶¶ 1-3). It is this Court's opinion that the allegations set forth in the initial Complaint make clear that the Pennsylvania-based corporation was no longer in existence and arguably put the current Defendant Washington Trotting Association, LLC on notice of the right to remove upon its receipt, at a time which was well before the removal was filed on February 21, 2017. To this end, the initial Complaint filed in the Court of Common Pleas on December 27, 2016 states that the non-diverse Defendant, Washington Trotting Association, Inc. "<u>was</u> a corporation registered in the state of Delaware, with a principal place of business located at 200 Racetrack Road, Meadow Lands, PA 15347" and that "[u]pon information and belief, in 2016,

Washington Trotting Association, Inc. was converted into Washington Trotting Association, LLC." (Docket No. 1-1 at ¶¶ 15-16 (emphasis added)). In any event, counsel for the parties later entered into a stipulation dated January 23, 2017 pursuant to which the non-diverse defendant, Washington Trotting Association, Inc. would be dismissed in favor of Washington Trotting Association, LLC. (Docket No. 1-1). Although the case was removed within 30 days of this stipulation, i.e., on February 21, 2017, the removal would not be timely if, for example, a draft of the stipulation was circulated on Friday, January 20, 2017, prior to the execution on January 23, 2017 or if there was other correspondence between counsel on this issue, which seems likely given the circumstances. *See Boggs*, 2016 WL 7403872, at *15-16. All told, if the Court had subject matter jurisdiction over this case, which it does not, the Court would further probe with the parties whether this case was timely removed before proceeding any further through case management.

Moving on to the more substantive deficiencies with the removal, Defendant cites a number of cases for the proposition that a class action may be removed pursuant to 28 U.S.C. § 1332(a) if the Court has diversity jurisdiction over the claims brought by the lead plaintiff against the Defendant and the Court may then exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the claims of the unnamed class members. (*See* Docket No. 18 (citing *Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005); *Shah v. Hyatt Corp.*, 425 F. App'x 121, 123 (3d Cir. 2011); *Sacchi v. ABC Fin. Servs.*, No. 14-1196, 2014 WL 4095009 (D.N.J. Aug. 18, 2014)). Plaintiff also refers the Court to a number of cases for the same proposition, including *Papurello v. State Farm Fire & Cas. Co.*, 144 F. Supp. 3d 746 (W.D. Pa. 2015) (Conti, C.J.). (Docket No. 20). The Court does not quarrel with these holdings but these cases are each distinguishable for two important reasons: (1) Defendant did not cite the supplemental

jurisdiction statute as a basis to remove the class action claims, as the Court noted that "no alternative basis for the assertion of subject matter jurisdiction" was asserted in the Notice of Removal, (*see* Docket No. 16); and (2) Defendant has failed to establish that the amount in controversy in this matter is in excess of $75,000.00 to a "reasonable certainty." Reconsideration is not appropriate of the former point because this argument was available to Defendant at the time of removal but was not asserted. See *Dupree*, 617 F.3d at 732-33. Similarly, reconsideration is not warranted on the latter point because Defendant has still not proven that the individual Plaintiff, Miller, has asserted claims against Defendant in excess of $75,000.00, despite having a second opportunity via the motion for reconsideration to make its case. (*See* Docket Nos. 1, 18).

With respect to the valuation of the individual claim for jurisdictional purposes, Chief Judge Conti's decision in *Papurello* is instructive as to the type of evaluation that is required.

> In this action, the named plaintiffs allege $28,682.41 in individual compensatory damages in the form of unpaid insurance benefits—i.e., the difference between $32,500.00 of damage to their home (less the $1000.00 insurance policy deductible) and the $2,817.59 payment plaintiffs received from defendant. See (ECF No. 1–2 at 6–7 ¶¶ 13–15). In addition, the named plaintiffs seek individual punitive damages under Pennsylvania's bad faith insurance statute, 42 Pa. Cons. Stat. § 8371. (ECF No. 1–2 at 17 ¶ 53.) Pennsylvania courts have approved § 8371 punitive damages awards of four to five times the amount of compensatory damages. *Grossi v. Travelers Pers. Ins. Co.*, 79 A.3d 1141, 1160–61 (Pa.Super.Ct.2013); *Davis v. Fidelity Nat'l Ins. Co.*, 32 Pa. D. & C. 5th 179, 2013 WL 10230561, at *12 (Pa.Ct.Com.Pl. Aug. 15, 2013). Four to five times $28,682.41 (i.e., plaintiffs' alleged compensatory damages) exceeds § 1332(a)(1)'s $75,000 amount in controversy requirement. Defendant, therefore, proved by a preponderance of the evidence that the amount in controversy alleged in the named plaintiffs' individual claims exceeds $75,000, exclusive of interest and costs, as required under § 1332(a)(1).

*Papurello*, 144 F. Supp. 3d at 753. The *Sacchi* court conducted the same type of assessment,

noting that the lead plaintiff's claim was worth, at most, approximately $30.00, far beneath the jurisdictional amount of $75,000.00. *See Sacchi,* 2014 WL 4095009, at *5-6. The Court of Appeals decision in *Shah* likewise concluded that the reversal was necessary because the District Court found that it had original diversity jurisdiction over the lead plaintiff's claim under 28 U.S.C. § 1332(a)(1) but erred by remanding that claim to state court along with the claims of the unnamed class members.[5] *Shah*, 425 F. App'x at 125; *see also Wilder v. Roma Food Enterprise,* 2015 WL 6164032, at *3-4 (D.N.J. Oct. 15, 2015).

In this case, neither party has made any effort to value Miller's claims seeking lost wages, (i.e., a percentage of tips that were not paid),[6] liquidated damages, (i.e., 25% of the lost wages), or interest.[7] (*See* Docket Nos. 1, 18, 20). Defendant's removal of Miller's claims thus rests solely on its valuation of the potential attorneys' fees that may be recoverable in this case, citing the hourly rates of the plaintiffs' lawyers and surmising that enough hours would be logged to bring the total amount of fees over the $75,000.00 threshold. (*See* Docket Nos. 1; 18). But, the Amended Complaint makes clear that the attorneys' fees are claimed for the prosecution of the entire class action. (*See* Docket No. 1-1 at ¶ 92 (relief sought in "wherefore clause" includes "Reimbursement of Class members' attorneys' fees and expenses incurred in this

---

[5] Notably, the Court of Appeals found that the District Court did not err by remanding the claims of the unnamed class members pursuant to 28 U.S.C. § 1367(c). *See Shah*, 425 F. App'x at 125. The reasoning employed by the Court in *Shah* for remanding the class claims may have been equally applicable in this matter but the Court need not reach that issue because it does not have subject matter jurisdiction over Miller's individual claims.

[6] Plaintiff alleges the following:
> Since the Meadows began offering table games in 2010, Defendant has deprived Plaintiff and Class members of compensation they earned by forcing Plaintiff and Class members to share tips with supervisory personnel who are prohibited by regulation from receiving tip distributions. Therefore, as set forth in detail below, Class members, including Plaintiff, are bringing a claim against Defendant under the Pennsylvania Wage Payment and Collection Law, 43 P.S. §§ 260.1, et seq., and a claim against Defendant for breach of contract.

(Amended Complaint at ¶ 9).

[7] As the Court noted in the prior Order, the FLSA case brought by table games dealers seeking unpaid overtime for the period of July 1, 2010 through December 31 in *Yanchak v. Cannery Casino Resorts, LLC*, Civil Action No. 13-1831, 2013, was resolved for a total amount of $350,000.00, of which $116,550 was approved in attorneys' fees and $4,943.80 in expenses. (Civ. A. No. 13-1831, Docket No. 78).

action")). While Plaintiff suggests that it is unknown how attorneys' fees are considered in this type of situation, (*see* Docket No. 20), the Court's research indicates that parties cannot meet the jurisdictional amount by aggregating the claims for attorneys' fees by the lead plaintiff and the other unnamed class members, as has been attempted here.

In this regard, the Court of Appeals addressed the "anti-aggregation rule" last year, holding that "[i]n general, the distinct claims of separate plaintiffs cannot be aggregated when determining the amount in controversy." *Auto–Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 395 (3d Cir. 2016) (citing *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 666 (3d Cir. 2002)). Other courts have addressed this proposition recently as well. *See also Pollock v. Nat'l Football League*, Civ. A. No. 12-130, 2013 WL 1102823, at *9 (W.D. Pa. Mar. 15, 2013) (Cerone, J.), *aff'd*, 553 F. App'x 270 (3d Cir. 2014) (quoting *Golden ex. rel. Golden v. Golden*, 382 F.3d 348, 355 (3d Cir. 2004) ("Each plaintiff must meet the amount in controversy requirement-claims may not be aggregated among plaintiffs to meet the statutory minimum.")). District courts have firmly rejected attempts to obtain diversity jurisdiction solely based on the aggregate amount of attorneys' fees that may be available for a proposed class action. *See, e.g., Kabana v. C.A.R.S. Prot. Plus, Inc.*, Civ. A. No. 15-7177 (SRC), 2015 WL 9308256, at *3 (D.N.J. Dec. 22, 2015) ("The amount in controversy for the named Plaintiff in this case does not include an entitlement to the aggregate legal fees of the proposed class. It appears to a legal certainty that Plaintiff cannot recover at least $75,000. This case fails to meet the amount in controversy requirement imposed by 28 U.S.C. § 1332, and this Court lacks subject matter jurisdiction over this case."). At most, proposed attorneys' fees must be prorated among the class members when valuing the individual claim. *See, e.g., W.C. Motor Company v. Talley*, 2014 WL 3882489, *5 (N.D. Ill. 2014) (citing Newberg on Class Actions) ("Like punitive damages, attorney fees must be divided

pro rata among [named plaintiff] and the absent class members to compute the amount in controversy."). Leading treatises support these legal principles. *Wright et al.*, FEDERAL PRACTICE AND PROCEDURE, § 3704.2, 14AA Fed. Prac. & Proc. Juris. § 3704.2 (4th ed.) ("But as is true of the judicial treatment of punitive damages, the case law indicates that as a general rule attorneys' fees in the multi-party or class action context cannot be aggregated; they must be prorated across all the representative plaintiffs and absent class members."); *Rubenstein, et al.*, NEWBERG ON CLASS ACTIONS § 6:9 (5th ed.) ("[A]ttempts to conceptualize certain types of remedies as common so as to meet the test—for example, injunctions, restitution or disgorgement, attorney's fees, and punitive damages—generally fail because they represent a pro rata distribution rather than a single, undivided interest shared among the plaintiffs.").

Beyond this authority, the Pennsylvania Wage Payment and Collection Law "only mandates an award of reasonable attorneys' fees. Courts retain discretion to determine the amount of the fees owed." *Oberneder v. Link Computer Corp.*, 548 Pa. 201, 696 A.2d 148, 206, n.6 (Pa. 1997); *see also Bair v. Purcell*, 2010 WL 3282653, *2-4 (M.D. Pa. Aug. 17, 2010). Further, "[t]he assessment of whether the amount in controversy is present in any given situation 'should be objective and not based on fanciful, pie-in-the-sky, or simply wishful amounts, because otherwise the policy to limit diversity jurisdiction will be frustrated." *Pollock*, 2013 WL 1102823, at *9 (quoting *Sammuel–Bassett*, 357 F.3d at 403). Having considered all of the parties' arguments, the Court finds that Defendant has failed to demonstrate that the amount-in-controversy of Miller's individual claims against Defendant are in excess of $75,000.00 to a reasonable certainty. *See Frederico*, 507 F.3d at 193. Defendant has only shown that a potential right of recovery of attorneys' fees in excess of that amount to prosecute the class claims which is not enough to confer diversity jurisdiction. As this Court lacks subject matter jurisdiction over

the individual claims of the lead plaintiff, the Court finds that the case was improvidently removed and must be remanded pursuant to 28 U.S.C. § 1447(c).

V. CONCLUSION

Based on the foregoing, Defendant's Motion for Reconsideration [17] is DENIED and the Court's Order of March 14, 2017 stands. An appropriate Order remanding this case to the Court of Common Pleas of Washington County follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
U.S. District Judge

Date: March 30, 2017

cc/ecf: All counsel of record.